**FLORIDA BRACE CORPORATION and Arthur R. Moore, Appellants,**

v.

**William L. BARTELS and Prosthetic & Orthopedic Supply Co., Appellees.**

**No. 19055.**

United States Court of Appeals Ninth Circuit.

May 23, 1964.

Edwin J. Welsh, Portland, Or., Aaron R. Townshend, Washington, D. C., for appellants.

Ramsey, Kolisch & Hartwell, J. Pierre Kolisch, Portland, Or., for appellees.

Before BARNES, MERRILL and BROWNING, Circuit Judges.

BARNES, Circuit Judge:

This is an appeal from a judgment of the district court denying recovery to appellants for the alleged infringement by appellees of Moore Patent No. 2,801,-630, and awarding attorneys' fees of $10,000 to appellees. The patent was upon a cervical collar, which permitted adjustments in height and to a lesser extent, in conformation to the body measurements of a wearer of the well known "Thomas Collar."

Jurisdiction below rested upon 28 U.S.C. § 1338, and here rests upon 28 U.S.C. § 1291.

The trial court in its opinion found that the Scott collar (itself an improvement on the Thomas Collar), existing in the prior art, "disclosed practically everything shown in the patent in suit." In Finding VIII the trial court found that they differed in that Moore "had adjustable clamps in addition to rivets" between the common two overlapped sheets of material; and in Finding IX that "the use of adjustable clamps in neck braces was old and Moore's use of clamps was obvious to a person having ordinary skill in the art."

■ We affirm the findings of noninvention, because of the proved prior art. We need not recite this art, nor need we reach the issue of whether Scott was a coinventor with Moore (as the trial court did), nor of infringement (as the trial court did not).

Nor is it necessary for us to pass upon whether the validity of the Bartels Patent No. 2,911,970 should have been determined, either through the filing of a supplemental complaint, or by the introduction of evidence. Bartels Patent No. 2,911,970, issued November 10, 1959, subsequent to the Moore Patent No. 2,-801,630, issued August 6, 1957, was mentioned in the counterclaim (by number) merely to accurately identify the alleged accused collar. No demand or request was made by appellees to establish its validity, nor was any issue raised as to its validity. Thus the validity of the subsequent Bartels patent was immaterial to any proof of the validity or invalidity of the Moore patent.

Further, appellants disclaimed "any attempt to attack the validity of the Bartels patent" in the instant case (Tr., Vol. II, pp. 26–27), and claimed it to be material "only on the issue of unfair competition." (Tr., Vol. II, p. 27.) That issue was abandoned (Tr., Vol. IV, p. 109), but only at the conclusion of the trial. Appellants also agreed: "If in fact the plaintiffs' [Moore] patent is invalid or not infringed, there is no unfair competition." (Tr., Vol. II, p. 30.) Thus, because we affirm the trial court's finding of invalidity, it is unnecessary to determine the unfair competition issue, whether abandoned or not abandoned.

Appellants also question the allowance of attorneys' fees.

The court found the plaintiffs' conduct: (a) in filing the suit charging defendants had infringed plaintiffs' existing and then assumedly valid Moore Patent '630 (Finding XVI); (b) in charging defendants with unfair competition and then introducing no evidence on that charge, and during trial abandoning such claim (Finding XVI); (c) in refusing to license defendant under the Moore patent, and refusing appellees' offers to take a license (Finding XVII); (d) in taking certain depositions relating to a patent owned by defendants (Finding XIX); (e) in knowing or having reason strongly to suspect that Moore was not the true inventor of the Moore patent (Finding XX); (f) in knowing, or having reason to believe that defendants were persons of limited finances, and if they defended the infringement charged, would incur a heavy substantial burden (Finding XXI); and (g) in "multiplying" the costs of defense (Finding XXI) all constituted "inequitable acts", and "that plaintiffs were guilty of bad faith in the filing and prosecution of the suit."

Title 35 United States Code § 285 provides the court "in exceptional cases may award reasonable attorney fees to the prevailing party." Appellees' counsel relies upon two cases from this circuit in support of his position that the award of attorney's fees is a matter within the judicial discretion of the trial court, and that a mere "finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force," is sufficient upon which to base attorneys' fees, quoting from Park-In Theatres v. Perkins, 9 Cir., 1951, 190 F.2d 137, 142, and Talon, Inc. v. Union Slide Fastener, Inc., 9 Cir., 1959, 266 F.2d 731 at 739. The latter case recites that attorneys' fees are properly refused where "the record did not support the finding of the trial court that there was bad faith."

The original language of the predecessor statute (35 U.S.C. § 70) reads:

"The court may in its discretion award reasonable attorney's fees to the prevailing party upon the entry of judgment on any patent case."

On July 19, 1952, this language was changed to the following:

"The court *in exceptional cases* may award reasonable attorney fees to the prevailing party." (Emphasis added.)

The "Revised Note" states:

" '[I]n exceptional cases' has been added as expressing the intention of the present statute as shown by its legislative history [1] and as interpreted by the courts."

1. U.S. Code Congressional and Administrative News, 1952, p. 2423.

This change in language certainly did not enlarge the judicial discretion of the trial judge; neither did it take any portion away. The emphasis on the exceptional case seems to refer to a general requirement disclosed by the adjudicated cases that some *wilfulness* must exist on the part of the losing party before attorney's fees are to be awarded. Cf. Packwood v. Briggs & Stratton Corp., D.Del.1951, 99 F.Supp. 803, cert. den. 344 U.S. 844, 73 S.Ct. 61, 97 L.Ed. 657, reh. den. 344 U.S. 882, 73 S.Ct. 174, 97 L.Ed. 683.

In the above case, the court stated a rule that is apt here; even though the facts differ:

> "Defendants' counsel was firmly convinced of the lack of invention in plaintiff's patent. His advice to his clients and the action they took do not, in my opinion, establish a case of 'willfulness.'
>
> "Accordingly, * * * attorney's fees were denied."

In the instant case, appellants' counsel was firmly convinced of the validity of the patent issued to his clients by the Patent Office. He was firmly convinced the validity of the Bartels patent was in issue, because it allegedly was a carbon copy of the Larkotex collar manufactured by appellants' licensee.

This court has rarely passed upon the question of whether an abuse of discretion existed in awarding attorney's fees under 35 U.S.C. § 285.

In Elrick Rim Company v. Reading Tire Machinery Co., 9 Cir. 1959, 264 F. 2d 481, 488, the trial court had found and concluded that Elrick's infringement was "willful, deliberate and intentional and continued after notice in writing." There the trial court had found validity and infringement, and we affirmed its finding on such issues. We also found "substantial evidence" to support a finding that Elrick's *adoption of a process substantially equivalent to that patented* was wilful, deliberate and intentional. Yet we held this was not the same as "a willful, deliberate and intentional *infringement.*" Elrick had not admitted or conceded that he had reasonable grounds for believing Reading's process was patentable. He testified he had "made an examination of the ultimate results of the Reading device and method, and concluded that Reading was not entitled to patent protection."

We then concluded:

> "Considered in the hindsight of this opinion, that was an erroneous conclusion. But it was not a wholly unreasonable or unfounded conclusion, since the question of patent validity, in our view is close on both the facts and the law. Having arrived at that conclusion, Elrick proceeded in the only way that he could to test the matter—he engaged in competition, and when resisted by Reading instituted this action for a declaratory judgment.
>
> "The finding of fact as to intentional infringement is therefore clearly erroneous. * * * Having concluded that the finding as to intentional infringement is erroneous, it is our view that there is nothing else to characterize this as an 'exceptional' case warranting the imposition of attorney's fees." (Id. 264 F.2d at 489.)

We relied in Elrick on Park-In Theatres v. Perkins, supra, and the cases cited therein which interpret the granted judicial discretion as permitting an allowance of attorney's fees only if the particular circumstance "makes it grossly unjust that the winner of the particular law suit be left to bear the burden of his own counsel fees which prevailing litigants normally bear." We concluded:

> "In all, we think the district court did not impose a sufficiently strict standard in finding cause adequate to justify an allowance of attorney's fees. Accordingly, the portion of the decree which makes such an allowance must be set aside."

We come to the same conclusion with respect to this case.[2]

There are here as litigants two appellants, once closely associated and now fundamentally at odds with each other, though necessarily joined as plaintiffs in this litigation. Appellees cite several incidents allegedly supporting the bad faith of Moore, but very little of substance to support the charge of bad faith on the part of the plaintiff Florida Brace Corporation.

A reading of the Findings XVI to XXI referred to above, upon which the finding of bad faith and the subsequent award of attorneys' fees rests, indicates the appellants and their counsel were doing only what almost everyone to whom a patent has been issued by the United States Patent Office has been doing for years. This they have done, aided and abetted and encouraged by, and under the advice of, the patent bar. What plaintiffs here did was to test the validity of their presumptively valid patent (a) by litigation which charges infringement in a certain accused device; (b) which attempted to bolster plaintiffs' position patentwise by charging "unfair competition"; (c) by refusing to license the manufacturer of the accused device;[3] (d) by taking depositions in support of a phase of a case which was later abandoned, *after the completion of plaintiffs' case;* (e) even though they were perhaps beset with "doubts" or "suspicions" as to the validity of their own patent; (f) nevertheless suing a corporate defendant and an individual who might not have had exactly the same financial standing as the plaintiffs; (g) and in so doing, "multiplying the expense." [4]

No one or all of these acts on the part of appellants or their counsel in our opinion justify the finding of bad faith and wilful infringement in the filing and prosecution of the suit on the record before us. Appellants thought that they had a good patent. They were proved wrong, but such proof does not establish a lack of good faith.

After a careful perusal of the record, we conclude that Findings of Fact XV to XXII, inclusive, are not supported by the record before us, and that therefore said findings, together with Findings of Fact XXIII and XXIV, do not support Conclusions of Law 4 and 5.[5]

The judgment is affirmed, except as to the judgment for attorneys' fees. The judgment is reversed insofar as it awards attorneys' fees of $10,000.

Appellants are to recover costs on this appeal; appellees are to recover costs below.

---

2. We have been referred to no case from the Supreme Court that is here controlling. So far as we can ascertain, it has not spoken on the subject. In addition to the cases cited above, and cited by us in 190 F.2d 137 at p. 142, we note our per curiam reversal as to attorneys' fees in Day-Brite Lighting v. Ruby Lighting Corp., 9 Cir., 1951, 191 F.2d 521; our reversal as to attorneys' fees only in Faulkner v. Gibbs, 9 Cir., 1952, 199 F.2d 635 (Judge Bone); our refusal to award attorneys' fees in a copyright case, Overman v. Loesser, 9 Cir., 1953, 205 F.2d 521 (Judge Stephens); and, as well, somewhat similar cases in which we refused to set aside an award of attorneys' fees, such as Shingle Product Patents v. Gleason, 9 Cir., 1954, 211 F.2d 437, 441 (Judge Stephens).

3. Having licensed Larkotex to use the patented device, appellants had a legitimate reason to refuse to license a second party charged with infringement, who had at least in part based his claimed invention on the licensee's product.

4. The *only* fact cited in appellees' brief (p. 22) to support this finding was the taking of the Texas depositions to support the theory referred to in' (d) supra.

5. We do not dignify by consideration the charge of appellants that attorneys' fees were awarded against them because they made a motion for a new trial, and declared they would appeal the trial court's decision. While there is some basis for such a position in an offhand remark of the trial judge (Rptr's Tr., Vol. IV, p. 127, lines 11 to 14), findings were not made in support of such a theory, and we assume the trial judge did not and would not exercise any judicial discretion based upon such a theory.