**SCRIPPS CLINIC AND RESEARCH FOUNDATION, and Rorer Group, Inc., Plaintiffs,**

v.

**BAXTER TRAVENOL LABORATO-RIES, INC., and Travenol Laboratories, Inc., Defendants.**

**Civ. A. 87–140–CMW.**

United States District Court, D. Delaware.

Feb. 8, 1990.

Gregory A. Inskip, of Potter, Anderson & Corroon, Wilmington, Del.; Eugene Moroz, and William S. Feiler, of Morgan & Finnegan, New York City, of counsel, for plaintiffs.

Allen M. Terrell, Jr., and Robert W. Whetzel, of Richards, Layton & Finger, Wilmington, Del.; Granger Cook, Jr., and Dean A. Monco, of Cook & Egan, Ltd., Chicago, Ill., and Paul C. Flattery, and Robert E. Hartenberger, of Baxter Traven-

**1474**

ol Laboratories, Inc., Deerfield, Ill., of counsel, for defendants.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

■ Plaintiffs Scripps Clinic and Research Foundation and Rorer Group, Inc. (hereinafter collectively referred to as "Scripps") filed this patent infringement suit in 1987 against defendants Baxter Travenol Laboratories, Inc. and Travenol Laboratories, Inc. (hereinafter referred to as "Baxter"). Baxter has asserted as defenses the patent's invalidity and unenforceability, and has also asserted a counterclaim for a declaratory judgment of invalidity, unenforceability, and noninfringement. Baxter has now filed a Motion for Judgment of Invalidity and Unenforceability of the Patent-in-Suit and For Exceptionality Under 35 U.S.C. § 285. Baxter bases its motion on the collateral estoppel effect of two decisions rendered on the same patent by Judge Schwarzer of the Northern District of California. Judge Schwarzer found the same claims at issue in this case invalid and unenforceable and awarded attorney fees based on a finding of exceptionality. Scripps does not oppose the collateral estoppel effect of Judge Schwarzer's ruling of invalidity and unenforceability. However, Scripps does oppose the application of collateral estoppel to the finding of exceptionality. For the reasons discussed below, this court grants Baxter's motion insofar as it seeks judgment of invalidity and unenforceability with respect to the patent claims at issue,[1] and also grants the motion insofar as it seeks a ruling of exceptionality and an award of attorney fees under 35 U.S.C. § 285.[2]

1. It has long been established that, in determining validity, each claim of a patent is treated as though it were a separate patent. 4 D. Chisum, *Patents* § 19.02[2][c], at 19–27 (1989).

2. Since this action arises under the patent laws, this court has jurisdiction pursuant to 28 U.S.C.A. § 1338(a) (West 1976). In addition, Scripps has asserted a claim of unfair competition related to the alleged infringement, which is also within this court's jurisdiction. *See* 28 U.S.C.A. § 1338(b) (West 1976).

## DISCUSSION

In this suit, Scripps has charged Baxter with infringement of claims 24 through 29 of United States Reissue Patent No. Re. 32,011 (the " '011 patent"), entitled "Ultrapurification of Factor VIII Using Monoclonal Antibodies". Prior to filing suit in this court, Scripps filed two actions in California against other defendants alleging infringement of the same patent.[3] Judge Schwarzer, who presided over the California cases, granted summary judgment for defendants on February 24, 1989. *Scripps Clinic and Research Foundation v. Genentech, Inc.*, 707 F.Supp. 1547 (N.D.Cal. 1989). Judge Schwarzer's opinion rested on four findings. First, the court invalidated claims 24, 26, and 27 on the basis of clear and convincing evidence of anticipation. *Id.* at 1552. Second, the court held that claims 24–29 were invalid for failure to disclose the best mode, as required by 35 U.S.C. § 112. *Id.* at 1555. Third, the court found clear and convincing evidence that the reissue patent had been obtained by engaging in inequitable conduct before the Patent and Trademark Office. *Id.* at 1557. Fourth, the court found clear and convincing evidence that the inventors had not complied with the requirements of 35 U.S.C. § 251. *Id.* at 1562. Based on these findings, the court ruled that claims 24–29 were invalid and unenforceable. *See* Memorandum in Support of Baxter's Motion at Exhibits B and C (Judgments of March 9, 1989).

On July 18, 1989, Judge Schwarzer awarded attorney fees to the defendants. *Scripps Clinic and Research Foundation v. Genentech, Inc.*, 724 F.Supp. 690 (N.D. Cal.1989). The court found that, based on

3. The California actions were brought by Scripps, which is the owner of the patent, and Revlon, Inc, the exclusive licensee. Revlon later sold its interest to Rorer Group, Inc., which was then added as a plaintiff in one of the actions. The actions initially alleged infringement of the original patent, United States Patent No. 4,361,509. During the pendency of those actions, Scripps applied for and received the reissue patent.

the patentee's misconduct, bad faith, and inequitable conduct in the prosecution of the original and reissue patents, the cases were "exceptional" and attorney fees were proper pursuant to 35 U.S.C. § 285.

The parties in this case agree that the court should hold the patent claims at issue invalid and unenforceable on the basis of Judge Schwarzer's February decision.[4] Indeed, the parties' view on this issue is correct. A defendant in a patent infringement action may assert as a defense the collateral estoppel effect of a prior judgment of the patent's invalidity. *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 350, 91 S.Ct. 1434, 1453–54, 28 L.Ed.2d 788 (1971). Collateral estoppel may be asserted even when the prior determination of invalidity is made on a motion for summary judgment rather than after a full-fledged trial. *Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 712 (Fed.Cir. 1983). A court must treat the prior determination of invalidity as an estoppel unless the patentee demonstrates that it was denied a full and fair opportunity to litigate the validity of the patent in the prior action. *Mississippi Chemical Corp. v. Swift Agricultural Chemicals Corp.*, 717 F.2d 1374, 1379 (Fed.Cir.1983); *Stevenson*, 713 F.2d at 709. Scripps does not oppose the collateral estoppel effect of the prior judgment of invalidity and unenforceability, indicating that Scripps believes it had a full and fair opportunity to litigate in the California actions. This court is therefore obligated to treat that prior judgment as an estoppel. The court hereby holds claims 24 through 29 of the '011 patent to be invalid and unenforceable.

Scripps, however, opposes Baxter's attempt to assert the collateral estoppel effect of the finding of exceptionality in the July order awarding attorney fees. Under

§ 285 of the Patent Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C.A. § 285 (West 1984). A court must engage in a two-step process in analyzing the propriety of attorney fees. *J.P. Stevens Co. v. Lex Tex Ltd.*, 822 F.2d 1047, 1050 (Fed.Cir.1987). The court must first determine whether the case is exceptional. *Id.* When an alleged infringer is the prevailing party, a court might find exceptionality if the patentee engaged in bad faith litigation or in fraud or other inequitable conduct during prosecution before the Patent Office. *Rohm & Haas Co. v. Crystal Chemical Co.*, 736 F.2d 688, 691–92 (Fed. Cir.1984). The prevailing party must prove bad faith conduct by clear and convincing evidence. *Reactive Metals and Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582 (Fed. Cir.1985). If the court finds the case exceptional, the court must then exercise its discretion in determining whether attorney fees should be awarded. *J.P. Stevens Co.*, 822 F.2d at 1050. The court should exercise its discretion in favor of awarding attorney fees only when it would be grossly unjust that the prevailing party be left to bear the burden itself. *Id.* at 1052.

The issue this court must address is whether Judge Schwarzer's ruling of exceptionality in a lawsuit not involving these defendants should be given collateral estoppel effect.[5] The court notes initially that Scripps would be precluded from relitigating this issue against the California defendants. *See* Restatement (Second) of Judgments § 29 comment a (issue preclusion may be imposed by a party not bound by a prior adjudication only if the precluded party would have been estopped from relitigating that issue with his original adversary; preclusion is thus proper only if the issue previously decided is identical to the present issue and was actually litigated

---

4. Cross-appeals from both of Judge Schwarzer's decisions have been taken to the Federal Circuit. However, the federal rule is that the pendency of an appeal does not suspend the collateral estoppel effect of an otherwise final judgment, unless the appeal removes the entire case to the appellate court and constitutes a proceeding *de novo*. 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.416[3], at 521–22 (2d ed. 1988).

5. Judge Schwarzer's finding of exceptionality is relevant to this lawsuit, since the finding was based on the patentee's conduct before the Patent Office rather than on the patentee's conduct during the litigation.

and essential to a valid and final judgment); *Haize v. Hanover Insurance Co.,* 536 F.2d 576, 579 (3d Cir.1976) (listing elements of collateral estoppel).[6] Furthermore, the federal courts have abandoned the traditional rule of mutuality which had denied the benefits of issue preclusion to nonparties. *See* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4464, at 570 (1981). The court believes that the application of nonmutual issue preclusion in the present context is especially appropriate because it would effectuate the policies underlying the ruling in *Blonder-Tongue. See Convergence Corp. v. Videomedia,* 539 F.Supp. 760, 766 (N.D.Cal. 1982).[7]

In *Convergence,* a Northern District of California court held that the collateral estoppel effect of a prior ruling of exceptionality may be asserted in a second action brought by the same plaintiff-patentee against a different defendant. *Id.* at 765, 766. The ruling was based on the court's belief that the application of collateral estoppel to the exceptionality issue would further the policies underlying *Blonder-Tongue. Id.* at 766. First, the Supreme Court had observed in *Blonder-Tongue* that patent defense is an extremely costly undertaking. *Id.* (citing *Blonder-Tongue,* 402 U.S. at 334, 91 S.Ct. at 1445). The

California court noted that, when a patent's invalidity has already been decided on the basis of the collateral estoppel effect of a prior judgment, *de novo* litigation of the exceptionality issue would force the trial court to examine many of the same complex issues that had already been adjudicated in the validity phase of the prior infringement action. *Id.*[8] Such a situation would cause duplicative expenditures of time and money for both the parties and the courts. *Id.*

A second concern voiced by the Supreme Court in *Blonder-Tongue* is that plaintiff-patentees gain leverage for inducing nuisance settlements and licensing agreements simply by filing infringement actions. *Id.; see Blonder-Tongue,* 402 U.S. at 338, 91 S.Ct. at 1447–48. The *Convergence* court noted that, even after *Blonder-Tongue,* patentees could still file multiple infringement actions and hope that each defendant would settle rather than face the financial burden of going forward on the validity issue.[9] *Id.* The application of collateral estoppel to the exceptionality issue would thus deter such behavior by increasing the financial risks that a patentee faces in filing multiple actions. *Id.* at 766–67.

This court agrees with the rationales expressed by the court in *Convergence* and

**6.** Scripps argues, however, that the determination of exceptionality was not essential to the judgment, and thus collateral estoppel should not apply. Scripps bases its objection on its belief that, in California, the issue of attorney fees is considered to be ancillary to the main action. Scripps' objection is misfounded; it is based on cases discussing the appealability of a judgment on the merits when questions relating to attorney fees remain unresolved. *See, e.g., International Association of Bridge, Structural, Ornamental, and Reinforcing Ironworkers' Local Union 75 v. Madison Industries, Inc.,* 733 F.2d 656 (9th Cir.1984). Those cases are not pertinent here. Resolution of the question of attorney fees was essential in the California actions, since the defendants had moved for an order awarding them the fees. Further, resolution of the exceptionality issue was essential to the fee award, since a ruling of exceptionality is a statutory prerequisite to an award of attorney fees. *See* 35 U.S.C.A. § 285 (West 1984). The application of collateral estoppel to the issue of exceptionality is therefore appropriate. *See also* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4447, at 406–07 (1981) (applica-

tion of issue preclusion to questions actually litigated and decided in post-judgment proceedings is as appropriate as in any other setting). The court also notes that issue preclusion is appropriate when an issue of "ultimate fact" (the application of law to fact) is determined. *See* Restatement (Second) of Judgments § 27 comment c.

**7.** On its face, *Blonder-Tongue* concerns only the collateral estoppel effect of a judgment of invalidity. *See* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

**8.** In an infringement suit, the same fraud or inequitable conduct that can lead to a ruling on the invalidity or unenforceability of a patent can form the basis for an award of attorney fees. *See* 4 D. Chisum, *Patents* § 19.03, at 19–47–48 (1989). Such is the case *sub judice.*

**9.** In other words, a patentee could file several infringement actions at the same time in recognition of the fact that all the defendants would be faced with the costs of proving invalidity until one of the defendants prevailed.

therefore holds that collateral estoppel should be available to an accused infringer on the issue of exceptionality. In this case, Judge Schwarzer engaged in an in-depth review of the patentee's conduct before the Patent Office. *See Scripps Clinic and Research Foundation v. Genentech, Inc.,* 707 F.Supp. 1547, 1552–1562 (N.D.Cal. 1989); *Scripps Clinic and Research Foundation v. Genentech, Inc.,* 724 F.Supp. 690, 691–92 (N.D.Cal.1989). Judge Schwarzer found exceptional circumstances based on clear and convincing evidence of inequitable conduct before the Patent Office; evidence of serious misconduct with respect to the reissue application; and evidence of bad faith in failing to comply with the best mode requirement. *Scripps,* 724 F.Supp. at 691–92. This court believes that it would be a colossal waste of resources to examine the issue anew.[10]

Although Baxter may raise the collateral estoppel effect of the prior ruling of exceptionality, Scripps must still be permitted to demonstrate that it did not have a fair opportunity to litigate the issue in the California court. *See Blonder–Tongue,* 402 U.S. at 333, 91 S.Ct. at 1445. However, Scripps has never contended that it lacked a full and fair opportunity to litigate the exceptionality issue in the California actions. In addition, an analysis of the factors courts consider in determining whether a patentee had a full and fair opportunity to litigate indicates that Scripps did have that opportunity.[11] Those factors include whether the patentee was the plaintiff in the prior suit and chose to litigate at that time and place; whether the patentee was prepared to litigate and to litigate to the finish against the defendant there involved; whether the prior court wholly failed to grasp the technical subject matter and the issues in the suit; and whether, without fault of its own, the patentee was deprived of crucial evidence or witnesses in the first litigation. *Stevenson v. Sears, Roebuck & Co.,* 713 F.2d 705, 709 (Fed.Cir.1983); *see Blonder–Tongue,* 402 U.S. at 332–33, 91 S.Ct. at 1444–45. With respect to the case at bar, the four factors indicate that Scripps enjoyed a full and fair opportunity to litigate. First, Scripps was the plaintiff in the prior suits. Second, Scripps was apparently prepared to litigate the prior suits to the finish; it litigated them for six years. Indeed, Scripps had ample incentive to litigate the issue of attorney fees since the fees for the six years must have amounted to a substantial sum. Third, Scripps has not indicated that Judge Schwarzer failed to grasp the technical subject matter and the issues in the prior suits. Fourth, Scripps has not alleged that it was deprived of crucial evidence or witnesses in the California actions. Since these factors indicate that Scripps had a full and fair opportunity to litigate the issue of exceptionality in the prior actions, and that at any rate Scripps has not carried its burden of proving otherwise, the court hereby precludes Scripps from relitigating the issue and holds this case to be exceptional.

10. Scripps relies on the authority of another California decision which held that factual findings in a prior case concerning the patentee's misconduct before the Patent Office should not form the basis for an automatic finding of exceptionality in the second action. *Chris–Craft Industries, Inc. v. Monsanto Co.,* 59 F.R.D. 282, 284–85 (C.D.Cal.1973). This court believes that *Chris–Craft* is distinguishable, for three reasons. First, the patentee in *Chris–Craft* was the defendant, not the plaintiff. Scripps, however, brought both the earlier and the present cases. Second, the prior adjudication in *Chris–Craft* did not determine exceptionality and did not award attorney fees; rather, it found facts that could form the basis for such a fee award. *Id.* at 285. In this case, Judge Schwarzer thoroughly analyzed the misconduct of the patentee in his ruling on invalidity. He later reviewed the evidence to determine the propriety of awarding attorney fees and found exceptional circumstances present. Third, the court in *Chris–Craft* noted that the defendant had not put the plaintiff to any undue expense, and that the case had remained relatively inert since its inception. *Id.* In contrast, the present case has been very active since it was filed. This court thus finds *Chris–Craft* inapposite.

11. The courts have enunciated these factors in the context of prior determinations of invalidity. *See, e.g., Stevenson v. Sears, Roebuck & Co.,* 713 F.2d 705 (Fed.Cir.1983); *Blonder–Tongue,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). The court believes that these factors are equally relevant when the prior determination is on the issue of exceptionality.

Although Scripps is precluded from relitigating the exceptionality issue, the court must still exercise its discretion on whether to award attorney fees. *J.P. Stevens Co. v. Lex Tex Ltd.*, 822 F.2d 1047, 1050 (Fed.Cir.1987). A court should exercise its discretion in awarding attorney fees only when it would be grossly unjust for the prevailing party to bear the burden itself. *Id.* at 1052. The court believes that it would indeed be grossly unjust for Baxter to pay its own attorney fees. Scripps' misconduct before the Patent Office was intentional and motivated by bad faith. After the misconduct occurred, Scripps hauled Baxter into court, thereupon causing Baxter to bear the expenses of nearly three years of active litigation. The court believes that Baxter should not be forced to bear the costs of a litigation which, absent Scripps' intentional misconduct in obtaining the patent, would most likely not have been brought.

### CONCLUSION

The court hereby grants Baxter's motion insofar as it seeks judgment of invalidity and unenforceability of claims 24 through 29 of the '011 patent. The court also grants Baxter's motion insofar as it seeks attorney fees based on a finding of exceptionality under 35 U.S.C. § 285. The parties should attempt to agree on a reasonable amount of fees. If the parties are unable to do so, Baxter should file with this court within 30 days of the date of this ruling, or within such other time period agreed to by the parties and the court, a detailed record of the fees incurred. Scripps retains the right to seek to vacate this judgment should the Federal Circuit reverse Judge Schwarzer's rulings.

An Order will issue in accordance with this Opinion.